It's like a change of dugouts. For a reverse double header here on it. Next case is IPS Group v. Duncan Solutions at AL 2018-1360. Mr. Costner. Good morning and may it please the court. We're here today on the district court action side because the district court committed fundamental errors both of claim construction and putting the district court inappropriately into the asserted by IPS Group relating to single space parking meters that are solar paneled, solar powered, and include the ability for the first time to use a credit card to pay for your parking. And you see these parking meters outside the court. They're all through the country. Let me focus you on first the 054. Thank you, Your Honor. The claim construction which is reflected in the motion may be a bit questionable in saying, as you argue, that it has to be entirely within. My understanding is that the record, the summary judgment record, was not made in the light of that claim construction which came only after the motion and response were filed. Is that correct? That is correct. And in fact, Your Honor, the claim construction changed in two places in the same order. So if you look at APPX 21 versus as applied APPX 24, there's a difference in the use of the words between the claim construction and the as applied claim construction to include this concept of entirety. Okay. So the experts in preparing their declarations weren't working from this new claim construction, correct? That's true, Your Honor. Okay. So I look at the record here and my produced a declaration saying that there was an infringement, that there was not infringement, correct? A subsequent report, yes, Your Honor. And then you submitted a series of declarations by Rosing which said that there is infringement. Exactly. Now I look at those Rosing declarations and the problem that I see there is I don't really see any conclusion by your expert that there's non-infringement except on the theory that there are three separate things here, that there's a middle portion of the meter. And let's assume that I were to say I don't agree with that theory that there are three separate portions of the meter as opposed to an upper portion and a lower portion. I don't see on that assumption that your expert really opined that there was infringement. I believe that, Your Honor. So the claims are agnostic to the location of the buttons in the 054 case. In the 310, these are very different patents that use terms in very different ways. I don't think you're addressing my concern. I don't see where your expert said that there was infringement if you put aside the three component theory, if we can call it that. Well, I believe that he says, for example, on 5597, these components may still form part of the lower portion, but she doesn't say that they do. I see the issue, Your Honor. Thank you. I would point the paragraphs, well, to appendix pages 7856 through 7. Paragraphs 23. 7856, okay, yeah. And I don't, unfortunately, I have that cited in my notes. I do not have the contents of those paragraphs in my, right next to me, I'm going to grab them right now. But I believe that at paragraphs 23 through 25, Dr. Roseng does go through and talks about how the, how the liberty protrudes out of the lower portion, and and that because the claims don't require any particular location for the button, that for the button panel, that constitutes infringement. Well, you don't have to show me where she says that. So, she, in paragraph 23, is talking about doctors, responding to Dr. Finney, she says that the claim also requires that the area designated lower portion have a shape and dimension such that is receivable within the housing base of the single-space parking meter. She cites to her opening report at paragraphs 6. But that's the reasons why the blue colored portion is receivable within the housing base. The blue colored portion is only part of the lower portion. It, that rests on her three component theory. But the claim is also an open-ended claim, Your Honor, and doesn't exclude three components. If you... Well, that's a different argument. I want you to put that aside for purposes of answering. I see her, I agree. I think she does say there are three components and only the blue needs to be received within the housing base, and it is received within the housing base. What I'm missing is any statement by your expert that if it's a two-component system, that the lower portion is still received within the base. That's what's missing. So, we have identified the blue portion is the I understand, but I'm not, I'm putting that to one side. And therefore, the protrusion that you're pointing to, the gray box or the uncolored portion of that figure, can remain a portion of the lower portion so long as as a, as, it doesn't, the claims don't require that the entirety of the lower portion fit within. Otherwise, we're getting right back to the erroneous claim construction, which is the entire... What I'm looking for is some statement by your expert that the lower portion here, if we're consider there to be only two portions, is receivable. I don't see that she said that. Well, she does point to the lower portion as being received within the, she points to the blue shape as being received within. The blue shape rests on a three-part theory. I don't believe it does, Your Honor. That, that gray part can be part of the lower portion as well. Just the entirety of the lower portion need not fit within. That's the entire problem with the claim construction of the received within as applied by the district court here, Your Honor. Moreover, to the extent that you're saying that there is a portion outside of the, of the lower portion, that can be either a middle portion because the claim is open-ended, and secondly, that can be another piece of a lower portion. Moreover, Your Honor, that Liberty meter portion is absolutely scalloped to fit directly within that U-shaped cutout in these conventional houses where Your Honor would historically put the coins in the mechanical meters. That U-shaped cutout is still there, and that conceivably is part of the lower portion as well. And in our figures in the patent, figures three, six, and seven, all of them demonstrate that there's a protrusion outside of that U-shaped cutout. So that is part of the lower portion as well. That, that lower portion is exactly adapted. In fact, their own documents... I just, I don't want to beat a dead horse here, but I just don't see where she says that the gray portion as opposed to the blue portion is receivable within the A colleague of mine will take a look, and I hope on my rebuttal time I'll have a citation for you. However, Your Honor, I, I think the entire device is shown, has that U, has that U-shaped scallop, which allows it to fit inside that housing element. If you look at the figures of the patent, you'll see the housing, which is identified with that U-shape, and the meter is designed to drop directly in. The meter device is designed to drop directly in. If that gray box didn't have behind it a cutout, which is designed to fit inside or to, to adapt to that U-shape, it would just sit on top. It wouldn't go all the way in and seat as it's supposed to in that meter to allow for a cover to come over the top, which is required also by the claim. So I believe that, that our expert did address that. Moreover, their own documents, which our expert relied upon, talk about their meter fitting within. And these are, for example, Appendix Site 8417, 8442, it goes on. But we've identified at least six different sites of their own internal documents and marketing materials which identify this as, their meter as fitting in or fitting within the lower, the lower base. There's also this issue of including in the closed-ended versus open-ended, which I'd like to address with respect to the 054. As applied, the district court applied a two-dimension plane and said everything north of that plane is upper and everything south of that plane is lower. But the patent demonstrates that these are complex three-dimensional structures. And when the court actually applied that at APPX 23, she committed error. She didn't, she excluded the possibility of having an alternative portion, as we've talked about earlier, Judge Teich. She said everything is either upper or lower and there can't be anything else. That's a, that's misapplying the transitional phrase including. Furthermore, with respect to the fact findings, the judge, Judge Betravango here, found that the keypad existed in the lower portion. So to the extent that she finds the keypad is in the lower portion, the claims are agnostic to where that keypad or where those buttons must occur. That's incorrect fact finding where she put herself into the shoes of the fact finder. She became our jury and that's inappropriate. Unless there are further questions on the 054, I'll shift to the 310. With respect to the 310, there is, we're here on the summary judgment, but let me just say there has been no allegation of any kind of incorrect inventorship with respect to the 310 in the district court action. With respect to the claim construction, we believe the error there as well. With respect to cover panel and the front face of the cover panel, the district court here required that the cover panel be one single element, the uppermost single element. That's not what the original claim construction was, but that's the way she applied it and you can see that at APPX 8 through 10 for example. She made a finding, a factual finding incorrectly, that the single, the dome element is the cover panel and that's at APPX 21. Under international rectifier, that's inappropriate. She's making fact findings as the fact finder on a record of contested facts, a true battle of the experts. She also precluded us from arguing doctrine of equivalence and that too was inappropriate. The analysis that the district court entered for the doctrine of equivalence, excuse me, summed about a page and it flies directly in the face of the Reed versus Portek case where this court allowed or said that when you make multiple amendments over a series of art that the examiner knows about and you make those amendments including one amendment, you don't apply the prosecution history estoppel bar to that individual amendment and I call the court's attention to footnote four of the Reed versus Portek case. Counsel, do you want to save some rebuttal time? Do you wish to or to continue? I do wish to, Your Honor. All right. Thank you. Mr. Kalb. Good morning. May it please the court. My name is Josh Kalb. I'm here on behalf of Duncan Parking Technologies and the other appellees. I'd like to start with the 310 patent because I hope we can just get that out of the way pretty quickly. The Liberty meter that was accused in this case does not infringe the 310 patent because the Liberty meters keypad is on the parking meter device not on the cover panel portion of the meter housing as claimed in the independent claims of the 310 patent and frankly it's not even a close call. The district court as we submitted in as supplemental authority found this claim to be frivolous and determined there be an exceptional case and awarded fees based on the assertion of the 310 claims. So let's look at the literal infringement and I want to focus in on one particular claim construction that is not challenged in this case which is of the cover panel as the upper structural component of the exterior casing. Again the Liberty meters keypad is built into the device itself which is inserted into the housing. That keypad is not part of the exterior casing. It is not housing nor does it become housing simply because the device is inserted into the housing base. Additionally it's not on the upper portion of the meter as required by the claim. The keypad sits well below the top level of the housing meter base so it doesn't meet the upper structural component limitation and additionally it's not structural. The keypad doesn't bear weight. It doesn't hold the meter together. It simply hangs over the edge of the housing base like an umbrella on a doorknob. So there's no structural component to that feature either. Now IPS has claimed that their experts opinion of infringement but as this court has already noted the expert applied the incorrect claim construction there and as a result the her opinion is not sufficient to prevent summary judgment. The other issue that IPS raises with regard to 310 is the doctrine of equivalence and here the application of prosecution history of Staple is clear. There was a narrowing amendment. The which had no limitation requiring buttons. There was a dependent claim that included buttons but just generally on the front face of the meter. IPS amended their claims to overcome prior art showing buttons on the front face of the meter to limit the structure of the claim dimension to buttons on the cover panel. What IPS seeks to do now is undo that surrender of claim scope and find infringement through equivalent of buttons that are on the front face. That's exactly what they surrendered and what they can't get back. Now they claim that this amendment was not for the purposes of patentability but the Warner-Jenkinson presumption first of all says that it there's a presumption that it is. They've done nothing to rebut that presumption. They've presented no evidence in the intrinsic record that shows the amendment was made for any purpose other than patentability. Additionally they contend that they didn't surrender or that the claim scope they surrendered was tangential. Here again the Festo presumption asserts that the scope surrendered is from no buttons at all all the way to buttons on the cover panel which we fall within. But more importantly the prior art that they amended the claim to overcome had buttons on the front face of the meter. As a result their amendment when they told the examiner that we are adding this housing as configured to overcome the prior art surrendered the concept of simply placing buttons on the front face of the meter and limited them to buttons on the cover panel. And since those don't appear in the accused device the court properly entered summary judgment. Now if we can turn to the 054. This might be a good place for me to re-ask you and I think your partner kind of indicated you might have something to add to 310. Why isn't the IPR appeal moot? Sure I'm not sure I have a better answer for you but what I will say is we had standing to file the IPR. We had been sued. The question is not everybody almost has standing to file the IPR. The question is who has standing to come into an article 3 court where there's a case of controversy argument and you stipulated to mootness if there's no infringement of the 310. Yes and I believe this court has the authority to decide either issue as it sees fit. I do not today I can't cite you authority with regard to whether the standing terminates when the infringement action terminates. Oh but I don't think that's really the question. The question is whether you care or have an interest in the validity of the 310 patent once your the present scope of products in the marketplace. I don't believe there's anything else implicated by the 310 but I can't say that with certainty right now. Now the accused Liberty meter doesn't infringe the 054 patent because the lower portion of the Liberty meter does not have the shape and dimensions to be receivable within the housing base. Is that just because there's a protrusion? Well it's because yes because that protrusion. My iPhone case which I would say my iPhone what is it is shaped and dimensioned so that it's receivable within the base. Some of the buttons on the side protrude. I think there's a difference. I think there's a difference between protruding which IPS has contended that the coin slot in figures 3 protrudes slightly from the housing base and what the Liberty keypad does which is it One could probably think of one of those you know front baby carriers where the baby's legs stick out of the bottom. I would say that lower portion of the baby is receivable within one of those things. Well I think the issue that the critical distinction here is the shape and dimensions to be receivable. What did your expert, I mean we got to deal with what the record is What did your expert Finney say rendered the Liberty meter non-infringing? Unfortunately the Finney declaration on infringements not in the joint appendix. Well one of the arguments he made was specifically this that because of the keypad extends outside and over the housing base that the lower portion is not receivable within. And again I think the critical component here is not just the term receivable within its shape and dimensions to be receivable within. And we're talking about that in the context of the lower portion. So you might be able under plain and ordinary meaning to argue as IPS does that putting the meter in the housing base with parts sticking out is receivable within. But when you talk about the lower portion being required to have the shape and dimensions, what that means to me is that that is the part that actually has to be inside the housing base. Now the plaintiffs have argued that the plain and ordinary meaning was the, or I'm sorry, that the court's construction was incorrect because she construed it at all. Their argument is she should have simply left it at the plain and ordinary meaning of receivable within. But we're sitting here today because there's a disagreement. When did you, if you did, first raise this argument that essentially says sufficiently great protrusions prevent coming within the claim? Well, and that the timing may have something to do with whether they made a record when they knew this was an issue or didn't even know it was an issue. Yeah, and I think they may simply have misremembered. But this issue was discussed in detail during the claim construction hearing, the original claim construction hearing. Although claims from the 310 patent were not being construed at the time, this exact issue was discussed. And at appendix 1666, or 116, 3 through 12, the district court said. I'm sorry, I lost you on the page. I'm sorry, it's appendix 1666. Okay. And it's at 116, 3 through 12. The district court said the distinction that the plaintiffs made in the prosecution history was that the prior art had some of these features were not within the housing unit. They were fitted to it in some way outside it. But we're limited to a device that is going to be in this housing unit, which fundamentally it's a device receivable within the base of a single space parking meter. So the whole thing has got to fit in this housing base. The bottom part has to be squarely within the base, fit within it, size and dimension. So the court's construction could hardly have come as a surprise. Wait, wait, wait. We're talking about two different things here. The entirely within construction didn't arouse until late in the case after the entire summary judgment record was made. They did not have any notice of that construction when they were preparing their papers. And I think there's a real question as to where that construction is right. Now we're talking about a different issue, which is whether something which protrudes a lot or has an overhang is receivable within. And I think the question is, was that argument, that second argument, raised in connection with the summary judgment motion? Whether something that protrudes renders it not? Whether it protrudes a lot or has an overhang renders it not receivable within. I think that, yes, the question of whether something within the scope of the claims was discussed. And that was the dispute with regard to the coin slot in Figure 4, I'm sorry, Figure 3, where the district court judge said that she didn't believe that that figure necessarily showed the coin slot protruding outside of the housing base. But the point and why I read that portion of the appendix is this idea of entirely within has been out from the beginning of this case in more than that, the district court didn't actually. Where was the entirely within raised earlier? I don't see that in the record and I don't know why you're arguing that it was. Well, what I'm talking about is that the judge's impression of receivable within was made clear at the claim construction in the portion that I just read. The entirely point? Yes, she said the whole thing has got to fit in this housing base. The bottom part has to be squarely within the base. Okay, you can argue the way you want, but it seems to me pretty clear that she changed the claim construction after the summary judgment papers were filed in this one respect. I respectfully disagree, but the other issue is I don't believe that entirely is, I think when if you read the judge's claim construction order, entirely wasn't actually part of court construction. She further explained that what she meant was entirely, but I think entirely is covered by the plain and ordinary language here. It's not, again, they are advocating the plain and ordinary language, but something that has the shape and dimensions to be receivable within has to be inside and the court construed receivable to be capable of being contained and within to be inside. I don't think those are I'm sorry, where is the relevant claim construction order? The relevant claim construction order is that is 1696, I believe. And where is the claim construction order? I'm sorry, Your Honor, that was the wrong claim construction order. 21, I think, Appendix 21. There, the court on Appendix 21 at the bottom of the page says the court finds the ordinary meaning of received to be contained and therefore construed... This is the summary judgment order. Yeah, and this this is where she entered the construction or she discussed the We're talking about the earlier claim construction that governed when the parties filed their papers, not some other construction that she arrived at later after the papers were submitted. What was the construction that was used in the summary judgment briefing? The issue there, Your Honor, is I don't believe receivable within was construed in that order. As I said, that the issue was discussed at the hearing, but receivable within was not one of the terms that the court construed in the original claim construction hearing. And that's an appendix that is Appendix 1694 through 1696 are the various terms that the So, again, the point on that, Your Honor, is just that the issue of entirely was known. The court didn't construe it until summary judgment. The parties submitted expert reports presenting their own positions. That's what brought together the disagreement with regard to the construction of receivable within. You weren't arguing in your summary judgment papers that it had to be I haven't been able to read the papers. That's my understanding. Well, we were arguing that the fact that the keypad extends outside of the housing base. Yes, that's a different argument. Well, for us, the keypad is on the lower portion, so in order for it, the device to be received entirely within, the keypad cannot overhang the housing base. Can I, can I help you more? I'd like to. Do you have a final thought? Your Honor, overall, in sum, we believe the district court properly construed the claims, properly granted summary judgment. Thank you for your time today, and we'd ask that you affirm the I came across the same sites, I believe, that you had earlier. Now, as my learned friend here just acknowledged, this issue of entirely within, the receivable within, was not construed at all during the preparation of the expert reports. I would submit that that particular paragraph that, Your Honor, happened upon, that paragraph 228 of that expert, the Dr. Rosing expert report that you cited, does get us where we need to be, but I believe we also said that in the end here, we would have the opportunity to at least address some of these, some of these additional and new claim constructions. And just to clarify, did did either side ask for a construction of the receivable? No, this, well, this came up in the context. I'm sorry, it's not just that there wasn't one as part of the claim construction order in December of 2016, is it also true that that was not presented by the parties in their claim construction briefs? I believe that is correct, because we didn't think there would be an issue about receivable within. It seems to us that a plain and ordinary meeting would make sense if you can fit your meter in the housing. So the summary judgment briefing was based on, on both sides, was based on the plain and ordinary meeting. Exactly, at least as in terms of receivable within, and I believe that the court's order at page 21 acknowledges exactly that, that receivable within is being construed for the first time here. And I'd note also that receivable within was construed with no citation to any intrinsic evidence. So what we would ask, Your Honor, well, I don't want to spend too much time on the 310. It was suggested that we didn't raise the question or it somehow waived the issue with respect to the claim construction on cover panel. We had not. Although at APPX 9516, I pointed that out in the district court, and certainly in our opening brief at page 42, note 12, we didn't raise that issue here as well. At the end, Your Honor, as my waiting seconds here, we would ask that Your Honors reverse the summary judgment on both non-infringement of the 310 and the 054, that you would correct the claim construction here, and that you would remand so we can take this case to trial and have the true fact finder make the findings of fact. Thank you, counsel. We'll take the case under advisement. Thank you.